## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**DANIEL M. HUYNH**,

       *Plaintiff*,

**v.**

       **Case No. 1:24-cv-476-RCL**

**AIR CANADA**,

       *Defendant*.

## <u>MEMORANDUM OPINION</u>

*Pro se* plaintiff Daniel Huynh alleges that Air Canada, a Canadian commercial airline, injured him by allowing him to travel with a particular piece of luggage from Reagan National Airport ("DCA") to Toronto, then forbidding him from traveling back because the same piece of luggage exceeded the airline's carry-on size regulations. As a result, he claims that he was forced to purchase expensive replacement tickets for himself and his family, and that Air Canada staff also harassed his family throughout the entire ordeal. He brings five claims sounding in tort—intentional inflection of emotional distress, false imprisonment, battery, identity theft, and fraud—as well as a contractual claim for breach of contract.

Air Canada has moved to dismiss the case for lack of personal jurisdiction and improper venue. Huynh argues that this Court may exercise personal jurisdiction over Air Canada and therefore urges the Court to deny Air Canada's Motion or, in the alternative, to permit jurisdictional discovery to prove that its exercise of jurisdiction would be proper.

Air Canada is correct that this Court lacks personal jurisdiction over Huynh's case. However, and despite Air Canada's arguments to the contrary, the Eastern District of Virginia would likely be able to exercise personal jurisdiction over the dispute, and the interests of justice

favor transfer to that jurisdiction rather than dismissal. Therefore, for the reasons contained herein, the Court will **DENY** the Defendant's Motion to Dismiss, **DENY** the plaintiff's request for jurisdictional discovery, and **TRANSFER** the case to the Eastern District of Virginia.

## I.  BACKGROUND

The following allegations are drawn largely from Huynh's Complaint. Huynh is a resident of Alexandria, Virginia. Compl. 1, ECF No. 1. On September 2, 2023, he purchased a multi-city flight ticket from the defendant Air Canada, an airline incorporated and headquartered in Canada. *Id.* The first leg of his trip was from DCA to Toronto, Canada, on November 3, 2023. *Id.* The second leg was from Toronto to Phoenix, Arizona on November 7, 2023. *Id.* His ticket entitled him to bring one piece of carry-on luggage with him. *Id.*

The first leg of Huynh's trip went off without a hitch. Nobody measured Huynh's bag or otherwise suggested that it might be too large to qualify as a carry-on. *Id.* at 1–2. On November 7, he arrived at the Toronto airport with his family forty minutes before his flight was scheduled to board.[1] *Id.* at 2. He was surprised when an Air Canada representative informed him that his luggage was too large to be taken aboard as a carry-on, and that it was then too close to his scheduled departure time for Huynh to check his luggage. *Id.*

Air Canada's staff refused to let Huynh board with his evidently oversized luggage, suggesting that he leave the luggage in a lockbox or have someone pick it up. *Id.* As a tourist in a foreign country, Huynh could not accept either of these options. Despite Huynh's pleas for help and offers to pay extra to take his bag with him, Air Canada's staff refused to assist him further, and threatened to call security if he continued to speak to them. *Id.* They also ridiculed Huynh's

---

[1] The parties seem to disagree whether Huynh arrived 40 minutes before *boarding* or 40 minutes before *departure*. *See* Mot. to Dismiss 2, ECF No. 9-1. That difference is immaterial for purposes of this Opinion, which focuses solely on the parties' jurisdictional dispute.

family—his young niece and nephew, and his mother who was suffering from cirrhosis of the liver—for their inability to speak English, and followed him to other Air Canada kiosks to prevent other Air Canada employees from helping him. *Id.* at 2–3.

Huynh, afraid of what might happen if his mother did not get back to Arizona in time to take her cirrhosis medication, decided to purchase same-day, one-way tickets from Toronto to Phoenix from another air carrier, United Airlines. *Id.* at 3. The tickets cost over $2,000. *Id.* Even then, Air Canada's staff continued to harass the family: An agent named "Ms. Beverly" followed the family to the United Airlines check-in area, convinced an airport security officer to pull Huynh out of the security lane, took a picture of Huynh's boarding pass, and informed him that he and his family would have to present themselves in Canadian court to answer for their supposed misconduct. *Id.* at 4–5. This experience was very distressing for Huynh and his family. Eventually, they were able to depart Toronto, but had to endure an unplanned ten-hour layover in New Jersey in addition to the added pecuniary and emotional toll of their voyage. *Id.* at 5.

On February 14, 2024, Huynh filed a Complaint against Air Canada in this Court, alleging breach of contract, intentional infliction of emotional distress, false imprisonment, battery, identity theft, and "defraud," which the Court understands to mean "fraud." *Id.* at 5. He requests $3,000 in compensatory damages, $197,000 in punitive damages, and such other relief as the Court may deem appropriate. *Id.*

On April 22, 2024, Air Canada filed a Motion to Dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and, alternatively, for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). Mot. to Dismiss 1, ECF No. 9–1. Huynh filed his Response in May 2024, in which he asks for the Court to deny the Motion to Dismiss or, alternatively, for jurisdictional discovery. *See* Pl.'s Resp., ECF No. 10. Air Canada filed its Reply

the following week.  Def.'s Reply, ECF No. 12.  Huynh has additionally filed what is, in effect, a

surreply.[2]  *See* Pl.'s Suppl. Mem., ECF No. 16.  The Motion to Dismiss is therefore ripe for this

Court's review.

## II.  LEGAL STANDARD

As the party invoking the federal court's jurisdiction, a plaintiff confronting a Rule 12(b)(2)

motion to dismiss for lack of personal jurisdiction "bears the burden of establishing a factual basis

for asserting personal jurisdiction over a defendant."  *Associated Producers, LTD v. Vanderbilt

Univ.*, 76 F. Supp. 3d 154, 161 (D.D.C. 2014) (citing *Crane v. N.Y. Zoological Soc'y*, 894 F.2d

454, 456 (D.C. Cir. 1990)).  In addition to the facts alleged by the plaintiff, "[a] court may consider

material outside of the pleadings in ruling on a motion to dismiss for lack of [personal

jurisdiction]."  *Madaket LLC v. Sweet Grace Distilling Co., LLC*, No. 23-cv-2928-JEB, 2024 WL

4650921, at *1 (D.D.C. Oct. 31, 2024) (Boasberg, C.J.) (second alteration in original) (quoting

*Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002)).  "The Court need not treat all of a

plaintiff's allegations as true . . . . However, any factual discrepancies with regard to the existence

of personal jurisdiction must be resolved in favor of the plaintiff."  *Plesha v. Ferguson*, 760 F.

Supp. 2d 90, 92 (D.D.C. 2011) (first citing *Exponential Biotherapies, Inc. v. Houthoff Buruma

N.V.*, 638 F. Supp. 2d 1, 6 (D.D.C. 2009), and then citing *Helmer v. Doletskaya*, 393 F.3d 201,

209 (D.C. Cir. 2004)).

A plaintiff may establish personal jurisdiction in either of two ways.  First, a plaintiff may

demonstrate that the defendant's affiliation with the forum state is so "constant and pervasive" as

---

[2] Huynh's *de facto* surreply was filed without leave of court.  Nevertheless, where there is a good reason to do so,
courts often exercise their discretion to consider surreplies submitted by *pro se* plaintiffs.  *See, e.g.*, *Buaiz v. United
States*, 471 F. Supp. 2d 129, 133 (D.D.C. 2007); *Rubio v. Dist. of Columbia*, No. 23-cv-719-RDM, 2024 WL 3400227,
at *4 n.8 (D.D.C. July 12, 2024).  In order to fully consider Mr. Huynh's arguments, some of which are articulated
most clearly in his surreply, the Court opts to consider it in the instant case.

to "render [it] essentially at home" in that jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). In that case, the court possesses "general jurisdiction" over that defendant, enabling it to "hear any and all claims against them . . . ." *Goodyear*, 564 U.S. at 919. In a case with a corporate defendant, general jurisdiction exists wherever the defendant is incorporated as well as wherever its principal place of business—i.e., its headquarters—is located. *Daimler*, 571 U.S. at 137; *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010) ("'Principal place of business' . . . refer[s] to the place where a corporation's officers direct, control, and coordinate the corporation's activities . . . [a]nd in practice it should normally be the place where the corporation maintains its headquarters . . . ."). The assertion of general jurisdiction in a forum *other than* the defendant's place of incorporation and principal place of business is possible, but only in "an exceptional case"; even demonstrating a "substantial, continuous, and systematic course of business" in the forum is not enough. *Daimler*, 571 U.S. at 138, 139 n.19; *cf. Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447–49 (1952) (finding that the exercise of general jurisdiction was allowable in a forum where the defendant corporation was not headquartered or incorporated, but where its president maintained an office, stored company files, maintained corporate bank accounts, held meetings with directors, distributed salary checks, engaged in correspondence on the firm's behalf, and oversaw the day-to-day operations of the company).[3]

---

[3] Huynh's Response also gestures to another, more obscure basis for general jurisdiction: a state may require a foreign corporation to consent to general personal jurisdiction in that state as a condition of registering to do business there. *See Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 134–36 (2023) (citing *Pa. Fire Ins. Co. of Phila. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917)). However, Huynh does not so much as allege that the District of Columbia has a consent-to-jurisdiction statute in force. And indeed, it does not: the D.C. Code's general jurisdiction provision reflects only the ordinary general jurisdiction principles articulated in *Daimler* and *Goodyear*. *See* D.C. Code § 13-422 ("A District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief.").

Alternatively, a plaintiff may establish the court's "specific or conduct-linked jurisdiction" over the defendant if two requirements are met: "(i) jurisdiction is permissible under the forum state's long-arm statute, and (ii) the exercise of personal jurisdiction comports with the Due Process Clause." *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 44 (D.C. Cir. 2020) (quoting *Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016, 1036 (D.C. Cir. 2020)).  For the exercise of specific jurisdiction to satisfy the Due Process Clause, the defendant must first have "[s]uch minimum contacts" with the forum to "show that 'the defendant purposefully avail[ed] [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  Second, it is not enough that the defendant's contacts with the forum merely exist in the abstract; "[t]here must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"  *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear*, 564 U.S. at 919).  In other words, "[p]laintiffs must establish a relationship among 'the defendant, the forum, and the litigation.'" *Estate of Klieman v. Palestinian Auth.*, 923 F.3d 1115, 1120 (D.C. Cir. 2019) (quoting *Walden v. Fiore*, 571 U.S. 277, 291 (2014)).  And third, the exercise of personal jurisdiction must comply with "fair play and substantial justice," which requires a court to balance "a range of factors, including the burden on defendants, the forum's interests in adjudicating the case, plaintiffs' interests in 'convenient and effective relief,' and the judicial system's interest in the efficient resolution of the controversy." *Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 234 (D.C. Cir. 2022) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985)).

III.    **THE COURT LACKS PERSONAL JURISDICTION**

### A.  The Court Lacks General Jurisdiction Over Air Canada

The defendant notes that Air Canada is incorporated and headquartered in Canada, not the District of Columbia.  *See* Aff. of Abdullah Sen ¶ 7–8, Mot. to Dismiss ex. 2, ECF No. 9-2.  Huynh does not dispute these facts, but nevertheless argues that this Court may properly exercise general jurisdiction over Air Canada because the airline's contacts with the District of Columbia are so continuous and systematic as to render it "at home" there.  In support, Huynh points to a litany of ways in which Air Canada interacts with the District: it advertises "[f]lights from Washington, D.C." to residents of the District, carries a high volume of air passenger traffic to and from DCA, frequently sends attorneys to D.C. to deal with federal regulatory agencies and participate in litigation, and flies its planes over D.C. airspace.  Pl.'s Resp. at 17–18.

These contacts with the District of Columbia are not nearly so "constant and pervasive" as to justify the "exceptional" exercise of general jurisdiction in a forum where the defendant is neither headquartered nor incorporated.  *Daimler*, 571 U.S. at 122, 139 n.19.  The indicia to which Huynh points—serving customers who reside in the District, flying over it, and navigating its regulatory landscape—suggest, at the very most, that Air Canada "engages in a substantial, continuous, and systematic course of business" in the District of Columbia.  *Daimler*, 571 U.S. at 138.  The Supreme Court has unambiguously instructed that assuming general jurisdiction on this basis alone would be an "unacceptably grasping" assertion of judicial power, *id.*, and this case proves the point.  If this Court were to hold that it possesses general jurisdiction over Air Canada based on the factors adduced by Huynh, it would follow that most major airlines operating in the United States are "at home" in the District—and could therefore be sued here for any claim whatsoever, no matter how remote.  Unsurprisingly, other courts in this District have roundly rejected this hypothesis.  *Crear v. Am. Airlines Grp.*, No. 23-cv-3812-CJN, 2025 WL 35931, at *3

(D.D.C. Jan. 6, 2025) ("As to general jurisdiction, the District of Columbia is not the [defendant] company's place of incorporation or principal place of business, so it is not a viable forum for the airing of 'any and all claims' against American Airlines Group.") (quoting *Daimler*, 571 U.S. at 127); *Mvuri v. Am. Airlines Inc.*, No. 18-cv-128-TJK, 2018 WL 10733604, at *1 (D.D.C. June 1, 2018) (holding that the Court lacked general jurisdiction over American Airlines because it is incorporated in Delaware, headquartered in Texas, and the plaintiff had demonstrated no facts suggesting that the airline was "at home" in the District of Columbia). This Court agrees, and therefore holds that Air Canada's affiliations with the District of Columbia, as expressed in the Complaint and the parties' briefs, do not give rise to general jurisdiction.

## B. The Court Lacks Specific Jurisdiction Over Air Canada

The facts of this dispute also do not support the exercise of specific jurisdiction. As described in the remainder of this section, the Complaint's essential deficiency is that it fails to establish the requisite triple-nexus between "the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 284 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)). This is so because, as courts in this District have recited on numerous occasions similar to this one, DCA is located in Virginia, not the District of Columbia. *See Powell v. Am. Airlines, Inc.*, No. 17-cv-1740-CKK, 2018 WL 2324087, at *2 (D.D.C. May 21, 2018) ("Although National Airport primarily serves Washington, D.C., it is located in the Commonwealth of Virginia."); *Williamson v. McKinney*, No. 87-cv-3038-OG, 1988 WL 129807, at *1 (D.D.C. Nov. 18, 1988) (acknowledging that "National Airport" is located "in the Eastern District of Virginia"); *Doe v. Benoit*, No. 19-cv-1253-DLF, 2020 WL 11885578, at *5 (D.D.C. June 29, 2020) (same); *accord*

Aff. of Abdullah Sen ¶ 12.[4, 5]  Therefore, even if the Court credits Huynh's theory that the locus of his injury is DCA—where Air Canada let him board with a piece of luggage too large to carry back with him—rather than Toronto, this case would still boil down to a dispute between a citizen of Virginia and a citizen of Canada based on conduct that occurred in Virginia.  These circumstances do not have the makings of specific jurisdiction in D.C.

Huynh, however, argues that exercising personal jurisdiction over Air Canada is allowable under the Due Process Clause and under any of the following provisions of D.C.'s long-arm statute, which provide for jurisdiction over a defendant "as to a claim for relief arising from the person's":

- "[T]ransacting any business in the District of Columbia," D.C. Code § 13-423(a)(1);

- "[C]ausing tortious injury in the District of Columbia by an act or omission in the District of Columbia," § 13-423(a)(3); or

- "[C]ausing tortious injury in the District of Columbia by an act or omission outside of the District of Columbia" if the defendant has certain other substantial contacts with the District, § 13-423(a)(4).

The Court will address each of these statutory provisions, and the requirements of the Due Process Clause, in turn.

### 1.  Specific Jurisdiction Is Unavailable Under § 13-423(a)(1)

With respect to § 13-423(a)(1), it may be true that Air Canada transacts business in the District of Columbia, but Huynh—a resident of Virginia who was injured either in Virginia or

---

[4] *See also Crear*, 2025 WL 35931, at *3 (noting that DCA is located in Virginia); *Mvuri*, 2018 WL 10733604, at *2 ("The Court takes judicial notice of the fact that Reagan National is, in reality, located in the Eastern District of Virginia.").

[5] Huynh protests that the airport was created pursuant in part to D.C. legislation, and that it is operated by the Metropolitan Washington Airports Authority ("MWAA"), which has directors appointed by the District.  Pl.'s Suppl. Mem. at 3.  But none of this, even if accurate, would change the simple fact that the airport is in Virginia.

Canada—must still allege that his claims "aris[e] from" Air Canada's transactions in the District. D.C. Code § 13-423(a); *see Benoit*, 2020 WL 11885578, at *5 ("[U]nder the District's long-arm statute, not all business in the District creates personal jurisdiction—the plaintiff's claims must have *arisen from* that business.") (emphasis in original); *id.* (holding that the defendant's flights to DCA did not suffice to establish specific jurisdiction in D.C. "for the plain reason that it . . . is located in Arlington, Virginia").  Huynh raises two theories in an attempt to tie his injuries to Air Canada's transaction of business in D.C., neither of which is persuasive.

First, he argues that Air Canada's interactions with federal regulators constitute business transactions in the District, and that Air Canada's regulatory approval to operate commercial flights in the United States "directly resulted" in his purchase of a ticket and his ensuing injuries. On its face, this connection is far too attenuated to give rise to specific jurisdiction.  But even if it were not, Air Canada rightly points out that Huynh's theory runs headlong into the so-called "government contacts" exception, recognized by D.C. courts, which "deems one not to be transacting business in the District of Columbia, or, perhaps, more accurately, . . . exempts one from assertions of personal jurisdiction in the District, if the 'sole contact with the District consists of dealing with a federal instrumentality.'"  *Rose v. Silver*, 394 A.2d 1368, 1372–73 (D.C. 1978) (quoting *Env't Rsch. Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 813 (D.C. 1976)). Therefore, even if Air Canada's dealings with federal regulators did, in some loose sense, cause Huynh's injuries, they could not form the basis for the exercise of specific jurisdiction.

Huynh's counterargument appears to be that this exception only applies if the defendant's interactions with regulators either 1) are for the purpose of protecting proprietary interests or 2) implicate First Amendment concerns.  Pl.'s Suppl. Mem. at 3–4 (first citing *Brink v. Cont'l Cas. Co.*, No. 11-cv-1733-EGS-ZMF, 2021 WL 7907065, at *5–6 (D.D.C. Dec. 27, 2021), and then

citing *Naartex Consulting Corp v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983)). This narrow interpretation of the government contacts exception rests on a flawed reading of the case law. The *Brink* court actually held that the exception includes, but *is not limited to*, appearances related to the vindication of proprietary interests. *Brink*, 2021 WL 77907065, at *5 ("'[A]dministrative appearances' before a federal agency—*including* those made to 'protect [] proprietary interests from an adverse regulatory decision'—are exempt as 'government contacts.'") (second alteration in original) (emphasis added) (quoting *Naartex*, 722 F.2d at 787). And a court in this District has recently concluded that "[i]t is by no means established that the government contacts rule is in fact limited to activities that implicate the First Amendment." *Robo-Team NA, Inc. v. Endeavor Robotics*, 313 F. Supp. 3d 19, 25 (D.D.C. 2018) (examining D.C. case law). Indeed, the core purpose of the government contacts exception is to prevent D.C. courts from exercising unbounded personal jurisdiction predicated solely on the performance of activities "which can only be accomplished in Washington," such as dealing with regulators. *Inv. Co. Inst. v. United States*, 550 F. Supp. 1213, 1217 (D.D.C. 1982).[6] Confining the government contacts exception to only those administrative appearances implicating proprietary or First Amendment interests would eviscerate the exception and thwart its animating purpose. It therefore appears likely that the courts of the District of Columbia would apply the government contacts exception in a case such as this one, and because "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons," this Court must do the same. *Daimler*, 571 U.S. at 125.

---

[6] *See also Env't Rsch. Int'l*, 355 A.2d at 813 (reasoning that the assertion of personal jurisdiction over nonresidents solely due to their contact with the federal government would "pose a threat to free public participation in government" and "threaten to convert the District of Columbia into a national judicial forum"); *Siam Kraft Paper Co., Ltd. v. Parsons & Whittemore, Inc.*, 400 F. Supp. 810, 812 (D.D.C. 1975) ("The traditional 'government contacts' principle . . . denies personal jurisdiction over non-residents whose only contact with this jurisdiction involves uniquely governmental activities. . . . To read a District of Columbia 'long arm' statute as authorizing jurisdiction in the United States courts for the District of Columbia, for all instances in which contacts occurred between the government agencies placed in the nation's capital and citizens from the fifty states, would be to convert the U.S. District Court here into a national forum.").

Second, Huynh argues that the "Defendant advertised its flight service from Washington National Airport to Toronto" to him, and that the advertisement's representation that the flight would originate from D.C. is part of the reason that he purchased the ticket. But to reiterate, Huynh himself is a resident of Virginia. He does not claim that he consumed Air Canada's advertising while in the District of Columbia, or that Air Canada's advertising directed to the District induced him to purchase the ticket. Therefore, even if it is true that Air Canada purposefully directs advertising toward the District of Columbia and its residents, Huynh has not elicited any causal connection between his own personal claims against Air Canada and those advertisements.

### 2.   Specific Jurisdiction Is Unavailable Under § 13-423(a)(3) and (4)

Sections (a)(3) and (a)(4) are equally inapplicable because both require the occurrence of a "tortious injury in the District of Columbia." Huynh's injuries took place either in Canada or Virginia, not the District of Columbia.

In sum, no provision of the D.C. long-arm statute justifies the exercise of specific jurisdiction over Air Canada. *Cf. Williamson*, 1988 WL 129807, at *2 (holding that no section of the D.C. long-arm statute affords specific jurisdiction over an alleged Fourth Amendment violation that took place at DCA because the plaintiff neither alleged a claim arising from a business transaction in the District of Columbia, nor specified any injury located in D.C.); *Mvuri*, 2018 WL 10733604, at *2 (holding that the Court lacked personal jurisdiction in a dispute "aris[ing] entirely from [the plaintiff's] employment at Ronald Reagan Washington National Airport . . . .").

### 3.    Exercising Specific Jurisdiction Would Also Violate the Due Process Clause

For essentially the same reasons, exercising specific jurisdiction over Air Canada would run afoul of the Due Process Clause.[7]  To reiterate, due process requires both that "the defendant has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities . . . ."  *Burger King*, 471 U.S. at 471–73 (first citing *Keeton*, 465 U.S. at 774, and then citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).  Though it may be true that Air Canada has extensive contacts with the District of Columbia, Huynh's injuries took place in Virginia or Canada.  The alleged connection between Air Canada's contacts with D.C. and those injuries, as discussed above, is somewhere between tenuous and nonexistent, and cannot give rise to specific jurisdiction.  *See Crear*, 2025 WL 35931, at *3 (holding that "[a]ny conduct that took place [at DCA] . . . fails to establish jurisdiction in this district" because DCA is located in Virginia).[8]

The Court concludes that Huynh has not made a sufficient factual showing to permit the exercise of either general or specific jurisdiction over Air Canada.  Because that is the case, the Court need not address the question of whether this Court would hypothetically be a proper venue.

---

[7] This outcome is, in a sense, foreordained because D.C. Code § 13-423(a)(1) "has been held by the District of Columbia Court of Appeals to be coextensive (for cases that fit within its description) with the Constitution's due process limit."  *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987) (Bader Ginsburg, J.).  Nevertheless, the Court provides the following analysis and application of Supreme Court case law for the sake of thoroughness.

[8] Because Huynh's claims do not arise from the defendant's contacts with D.C., there is no need to discuss whether forcing Air Canada to defend this suit in the District would comply with "fair play and substantial justice."  *Atchley*, 22 F.4th at 234 (quoting *Burger King*, 471 U.S. at 476).  However, it bears mention that none of the witnesses or evidence in this case is likely to be found in D.C.  Moreover, though the District of Columbia may have some general interest in ensuring that people who fly in and out of its nearest airport can conveniently seek redress for injuries incurred while traveling, that interest is implicated only weakly in this case, which "involves all out-of-state parties, an out-of-state accident, and out-of-state injuries."  *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 368 (2021).

**IV.    JURISDICTIONAL DISCOVERY IS NOT APPROPRIATE IN THIS DISPUTE**

Huynh has also asked the Court for the opportunity to conduct jurisdictional discovery to obtain facts that would assist him in establishing the Court's personal jurisdiction over Air Canada. "[I]f a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000). Conversely, if jurisdictional discovery "is likely to be a fishing expedition because it is unlikely to uncover" jurisdictionally relevant facts, it should be denied. *Lewis v. Mutond*, 62 F.4th 587, 596 (D.C. Cir. 2023). Because none of the information that Huynh seeks is pertinent to the Court's jurisdictional determination, his request will be denied.

Huynh has asked this Court to permit discovery as to the following facts: whether Air Canada has property in the District of Columbia, how many people from the District of Columbia visit Air Canada's website each day to purchase tickets, whether Air Canada has entered into a contract with an agent to sell its services in the District, and how much revenue and profit Air Canada earns from serving D.C. residents. Pl.'s Resp. at 21–22. These factual inquiries might be relevant to the determination of whether Air Canada has systematic contacts with the District of Columbia. But, to reiterate, the critical jurisdictional deficiency in Huynh's Complaint is not that Air Canada lacks minimum contacts with the District of Columbia. Rather, it is that Huynh's injuries do not arise from Air Canada's contacts with D.C. Suppose, hypothetically, that Air Canada has contracted with an agent to sell goods in D.C.; that Air Canada owns property in the District that it uses as an office; that Air Canada carries on a bustling, highly profitable business serving the residents of D.C. None of that would change the essential fact that Huynh's injuries happened either in Virginia—where Huynh resides, where he purchased his ticket, and where DCA is located—or in Canada, where he was denied permission to board. Nor would it convince the

Court that Huynh's injuries somehow resulted from Air Canada's contacts with D.C., however abundant those contacts may be. Jurisdictional discovery in this case would accordingly be futile.[9]

## V. THE CASE SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF VIRGINIA

28 U.S.C. § 1631 provides that "[w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action . . . could have been brought at the time it was filed . . . ." The Court may, in its discretion, transfer the case even where, as here, no party has moved for such a transfer. *Jovanovic v. US-Algeria Bus. Council*, 561 F. Supp. 2d 103, 112 n.4 (D.D.C. 2008) ("[S]ua sponte transfers pursuant to 28 U.S.C. § 1631 are committed to the discretion of the District Court where no party has moved to transfer a case brought in the wrong jurisdiction.") (citing *Hill v. U.S. Air Force*, 795 F.2d 1067, 1070 (D.C. Cir. 1986)). The interests of justice especially favor transfer over dismissal where, as here, "the plaintiff files a complaint *pro se*." *James v. Verizon Servs. Corp.*, 639 F. Supp. 2d 9, 15 (D.D.C. 2009). However, the Court must first determine that the transferee court would probably have personal jurisdiction over the dispute. *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 793 n.16 (10th Cir. 1998); *United States v. Heller*, 957 F.2d 26, 27 (1st Cir. 1992); *see also Erwin-Simpson v. AirAsia Berhad*,

---

[9] This analysis focuses on the use of jurisdictional discovery to support the exercise of *specific* jurisdiction. It is not a metaphysical impossibility that the jurisdictional discovery which Huynh seeks could uncover facts supporting the assertion of *general* jurisdiction in D.C., though it is virtually impossible as a practical matter.

For sake of argument, imagine that jurisdictional discovery revealed that Air Canada owns an enormous office complex in D.C.; that most of its non-executive employees and many of its executives work there, and that it frequently hosts director meetings; that Air Canada's payroll operations and bank accounts are in D.C.; and that the airline derives 95% of its revenue from serving D.C. residents. Those facts might cumulatively amount to the "exceptional case" where general jurisdiction would exist in D.C., despite the defendant being neither incorporated nor headquartered here. *Daimler*, 571 U.S. at 139 n.19. But "in order to get jurisdictional discovery a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998). Common sense counsels that a plaintiff seeking jurisdictional discovery in hopes of proving *general* jurisdiction in a forum where the defendant is neither headquartered nor incorporated must provide the Court with some credible grounds to believe that the extraordinary factual basis for such jurisdiction actually exists. Huynh cannot do so here.

985 F.3d 883, 892 (D.C. Cir. 2021) (interpreting a similar transfer statute and holding that "transfer would be permissible only if the [transferor] district court could determine that the [transferee district court] likely would have personal jurisdiction over" the defendant).  In this case, the Court is satisfied that the Eastern District of Virginia would likely have personal jurisdiction over this dispute, and will accordingly transfer it.

The Eastern District of Virginia appeals to the U.S. Court of Appeals for the Fourth Circuit, which adheres to a personal jurisdiction analysis essentially identical to that of the D.C. Circuit: "An exercise of personal jurisdiction over a party is . . . appropriate 'if [1] such jurisdiction is authorized by the long-arm statute of the state in which it sits and [2] the application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." *In re Eli Lilly & Co.*, 580 F. Supp. 3d 334, 340 (E.D. Va. 2022) (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009)).  Virginia's long-arm statute is comparable to the District of Columbia's, authorizing in pertinent part the exercise of personal jurisdiction over any person "who acts directly or through an agent, as to a cause of action arising from the person's:

1. Transacting any business in this Commonwealth; . . .

3. Causing tortious injury by an act or omission in this Commonwealth; [or]

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth . . . ."

Va. Code Ann. § 8.01-328.1(A).  It seems probable that Air Canada transacted with Huynh in Virginia, and Huynh certainly alleges that his tortious injury took place at DCA, which is in Virginia, so the statutory requirements for personal jurisdiction seem to be satisfied.  Moreover,

like D.C.'s long-arm statute, Virginia's "is intended to extend personal jurisdiction to the extent permissible under the due process clause," so "the statutory inquiry merges with the constitutional inquiry." *Consulting Eng'rs*, 561 F.3d at 277.

Courts in the Fourth Circuit assess whether due process is satisfied by considering "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)). The constitutional reasonability analysis requires the court to take stock of "(a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies." *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 946 (4th Cir. 1994). Finally, the exercise of specific jurisdiction requires that the plaintiff's claims arise out of the defendant's activities in the forum; the defendant's conduct in the state must, in other words, be the "genesis of [the] dispute." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 295 (4th Cir. 2009).

Recent case law from district courts located in the Fourth Circuit about airline-related injuries suggests that the exercise of personal jurisdiction in Huynh's case would probably pass constitutional muster in the Eastern District of Virginia. In *Phillips v. British Airways*, a Maryland citizen purchased a round-trip ticket from Dulles International Airport (which, like DCA, is located in Virginia) to Tel Aviv, with a layover in London. 743 F. Supp. 3d 702, 707 (D. Md. 2025). The plaintiff slipped and fell as she disembarked in London from the first leg of her return flight, causing severe injuries for which she sued in the District of Maryland. *Id.* The court held that it

lacked personal jurisdiction over the dispute because the plaintiff's claim did not arise out of the defendant's activities in Maryland.  Three key factual deficiencies conspired to deprive the court of personal jurisdiction: The plaintiff "d[id] not allege [1.] that she bought her ticket from British Airways in Maryland, [2.] that she flew on a British Airways plane from or to an airport in Maryland, or [3.] that the alleged negligence occurred in Maryland."  *Id.* at 715.  The court further noted that, even if the plaintiff *had* alleged that she had purchased the ticket in Maryland, that fact standing alone would not have been enough to confer personal jurisdiction.  *Id.* at 712 (citing *Rao v. Era Alaska Airlines*, 22 F. Supp. 3d 529, 533 (D. Md. 2014)).

*Selke v. Germanwings GmbH*, 261 F. Supp. 3d 666 (E.D. Va. 2017), provides a useful comparator.  The plaintiff sued United Airlines as executor of the estates of two women who flew on United from Dulles to Manchester, England, and were scheduled to fly to various European destinations via European air carriers before returning to Dulles on United.  *Id.* at 669–70.  One of the intra-European flights crashed, killing both women.  *Id.* at 670.  The court held that it could exercise specific jurisdiction over United Airlines, *even though* the plaintiffs perished on a different airline's flight.  *Id.* at 674.  The *Selke* court first determined that United has sufficient contacts with Virginia because, among other reasons, it employed people in the Commonwealth, operated flights into and out of Virginia airports, and bound itself contractually to perform certain duties in Virginia through its carriage contracts.  *Id.* at 672–73.  Second, the court held that the plaintiffs' injuries arose from United's contacts with Virginia because United sold the decedents tickets "not only for the flight that carried them to Europe, but also for air carriage on Lufthansa and Germanwings for the additional legs between European destinations."  *Id.* at 674.  Because the Virginia decedents' "substantial correspondence and collaboration" with United "form[ed] an important part of the claim," the court concluded that their claim arose out of United's contact with

Virginia.  *Id.* (quoting *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 303 (4th Cir. 2012)).  Finally, the court held that the exercise of personal jurisdiction would be constitutionally reasonable because litigating in Virginia would not significantly burden United, which had litigated many times before in Virginia; the Commonwealth had a strong interest in adjudicating claims brought by Virginia plaintiffs; and "neither party ha[d] demonstrated that this action might be better suited to an alternative forum . . . ."  *Id.* at 675.[10]

The case at hand bears a stronger resemblance to *Selke* than to *Phillips*, and appears to satisfy each prong of the Fourth Circuit's personal jurisdiction analysis.  First, there can be no serious dispute that Air Canada maintains minimum contacts with Virginia: it has purposefully availed itself of the laws of the forum by operating flights in and out of a Virginia airport, and by marketing and selling tickets on these flights to Virginia citizens such as Huynh.

Second, it appears that Huynh's claims arise from Air Canada's contacts with Virginia. Huynh alleges that Air Canada's own employees subjected him to injury while he attempted to access the second leg of his Air Canada itinerary, the first leg of which originated from a Virginia airport.  These circumstances evince a strong connection between Air Canada's conduct in Virginia and Huynh's injuries—stronger, certainly, than in *Selke*, where the Eastern District of Virginia exercised personal jurisdiction over United Airlines despite the plaintiffs' injuries taking place on a flight that neither departed from Virginia nor was operated by United.  The connection between Huynh's claims and Air Canada's conduct in Virginia also compares favorably to *Phillips*

---

[10] This Court ordered Air Canada to show cause as to why the case should not be transferred to the Eastern District of Virginia.  *See* Order of Jan. 29, 2025, ECF No. 17.  In its response to that Order, Air Canada attempted to distinguish *Selke*, noting that the *Selke* plaintiffs' claims were based on an international treaty known as the Montreal Convention, whereas Huynh alleges only state law contract and tort claims.  That distinction, though accurate, is a non sequitur. Air Canada does not, for example, explain why the *Selke* plaintiffs' treaty-based cause of action would enhance the forum's interest in adjudicating that dispute relative to Huynh's state-law causes of action, or why the Montreal Convention should affect this Court's assessment of where the "genesis of the dispute" is.  Because Air Canada's proposed distinction has no relevance to any aspect of the personal jurisdiction analysis, it is unavailing to their cause of resisting transfer to the Eastern District of Virginia.

in which, to reiterate, the court found personal jurisdiction to be lacking because the plaintiff neither purchased her ticket in, flew out of, nor alleged any misconduct in the forum state. Admittedly, similar to the plaintiff in *Phillips*, Huynh fails to allege that he purchased his ticket in Virginia (though as a Virginia resident it seems probable that he did).  But unlike the plaintiff in *Phillips*, Huynh's Complaint clearly establishes that he flew out of Virginia and articulates a plausible theory that his injury took place at least partially within the Commonwealth: Air Canada's DCA-based staff failed to inspect or measure his carry-on, thus wrongfully misrepresenting "that his carry[-]on was fine to carry onto its aircraft."  Compl. at 1; Pl.'s Resp. at 15.  Therefore, Huynh's case is not plagued by the same factual deficiencies that led to dismissal in *Phillips*.

Third and finally, it does not seem likely that a Virginia court would find the exercise of personal jurisdiction over Air Canada constitutionally unreasonable.  True, a large portion of the witnesses and evidence relevant to this dispute is likely to be located in Canada, but some may be found in Virginia—Huynh's point of departure—as well.  Huynh has also convincingly alleged that Air Canada maintains a legal presence in the Washington, D.C. area, *see* Pl.'s Resp. at 17–18, so defending suit in the nearby Eastern District of Virginia is unlikely to be unduly burdensome. Nor could Air Canada be caught off guard by having to defend suit in Virginia, given its participation in the heavily-regulated aviation industry at a large Eastern Virginia airport.  By contrast, Huynh (a private citizen of Virginia, proceeding *pro se* and with no experience of the Canadian legal system) would be burdened tremendously by having to litigate in a Canadian court, and has a correspondingly strong interest in obtaining relief locally.  Finally, as the *Selke* court noted, Virginia has an interest in adjudicating matters brought by its own citizens.  *Selke*, 261 F. Supp. 3d at 675.  That interest is heightened when those citizens are injured incident to their use

of an airport located in, and partially supervised by, the Commonwealth.  *See* 49 U.S.C. § 49106 (discussing the Metropolitan Washington Airports Authority's relationship to the Commonwealth of Virginia).

      With all three prongs of the Fourth Circuit's personal jurisdiction analysis satisfied, it seems probable that a court in the Eastern District of Virginia would find the exercise of specific personal jurisdiction over Huynh's dispute to be proper.

## VI.   CONCLUSION

      This Court does not have personal jurisdiction over the defendant Air Canada, but the Eastern District of Virginia probably does.  Huynh, meanwhile, has already been pursuing relief for a year, without the benefit of legal representation.  Under these circumstances, the Court finds that it is both legally permissible and in the interests of justice to transfer the dispute to the Eastern District of Virginia.  An Order transferring the case, consistent with this Opinion, will issue separately.

Date:    2-18-25

Royce C. Lamberth
United States District Judge